EMILIO M. GARZA, Circuit Judge,
dissenting:
I agree with the majority that petitioner Leslie Parnell Felder’s incarceration, pro se status, and claim of actual innocence do not warrant equitable tolling of the Anti-Terrorism and Effective Death Penalty Act of 1996 (“AEDPA”) statute of limitations. I do not agree with the majority’s decision to deny Felder’s claim for equitable tolling based on his alleged ignorance of AEDPA, which Felder has attributed to the statute’s complete inaccessibility to him throughout his § 2254 filing period. Under the circumstances, the majority’s decision is at least premature. I therefore respectfully dissent.
Felder claims that he is entitled to equitable tolling of the AEDPA statute of limitations because he had no notice of AED-PA until he received Respondent’s motion to dismiss.[1] Felder directly attributes this actual ignorance to the fact that the AED-PA was not available from the Eastham Unit library until September 1997 — seventeen months after AEDPA’s enactment, and several months after the expiration of Felder’s grace period for filing his § 2254 petition. See Flanagan, 154 F.3d at 200 n. 2. Felder has submitted supporting affidavit testimony from other Eastham Unit inmates also alleging that the AEDPA was unavailable until September 1997. Felder’s own affidavit specifically attests that, had Felder known of AEDPA, he would *174 have filed his § 2254 petition within the one-year grace period.[2]
The majority relies neither on an evaluation of the credibility of Felder’s claims nor on other factual circumstances particular to this case.[3] Instead, it sets forth a blanket rule that actual ignorance of the AEDPA limitations period, even if attributable to the newly-enacted statute’s complete unavailability to inmates, can never be a basis for equitable tolling. I believe that this new rule is not consistent with the purposes of equitable tolling of the AEDPA limitations period. Nor is it supported by the available case law.
The majority is correct to note that ignorance of the law is not itself a basis for equitable tolling of a statute of limitations, even for pro se prisoners. See, e.g., Fisher v. Johnson, 174 F.3d 710, 714 (5th Cir.1999). But Felder’s claim is not based merely on ignorance of the law. It is based on an ignorance of the law allegedly created by the prison’s denial of access to AEDPA for seventeen months after its enactment. Equitable tolling is appropriate when an extraordinary factor beyond the plaintiffs control prevents his filing on time. See Davis v. Johnson, 158 F.3d 806, 811, (5th Cir.1998), cert. denied, — U.S. -, 119 S.Ct. 1474, 143 L.Ed.2d 558 (1999) (equitable tolling appropriate in “rare and exceptional circumstances” where equity demands it); Coleman, 184 F.3d at 402 (equitable tolling is limited to circumstances where plaintiff is misled by defendant or “prevented in some extraordinary way from asserting his rights”); Calderon v. United States Dist. Ct., 163 F.3d 530, 541 (9th Cir.1998) (equitable tolling is appropriate if “extraordinary circumstances beyond a prisoner’s control” prevent timely filing of § 2254 petition). The unavailability of the newly-enacted AEDPA to a prisoner is an external factor beyond his control. Given that AEDPA imposed a statute of limitations on the filing of § 2254 petitions for the first time, if the statute was completely unavailable during a prisoner’s entire period for filing his § 2254 petition, it might prevent him from timely filing his petition. Such a result would be — indeed, must be — “extraordinary.” [4] I therefore do not believe that we can establish a blanket rule that actual ignorance of the newly-enacted AEDPA statute of limitations, even if resulting from a prison’s failure to allow *175 access to the statute for a petitioner’s entire filing period, can never be grounds for equitable tolling.
Adopting such an overbroad rule also fails to comport with the equitable nature of the remedy. “The doctrine of equitable tolling preserves a plaintiffs claims when strict application of the statute of limitations would be inequitable.” Davis, 158 F.3d at 810. “As a discretionary doctrine that turns on the facts and circumstances of a particular case, equitable tolling does not lend itself to bright-line rules.” Fisher, 174 F.3d at 713. Instead, “we and the district court must examine each case on its facts to determine whether it presents sufficiently ‘rare and exceptional’ circumstances to justify equitable tolling.” Id. (citing Davis, 158 F.3d at 811). The need to adhere to these equitable precepts is heightened because “dismissal of a first habeas petition is a particularly serious matter,” Lonchar v. Thomas, 517 U.S. 314, 324, 116 S.Ct. 1293, 1299, 134 L.Ed.2d 440 (1996), subject to constitutional challenge.
No court that has acknowledged the possibility of equitable tolling has held that actual ignorance of AEDPA, resulting from the denial of access to the newly-enacted statute, can never be a basis for equitable tolling. Only two of the cases cited by the majority address such a claim, as opposed to equitable tolling claims based on ignorance of the law alone. Those cases — the only published cases addressing the issue — are Fisher and Miller v. Marr, 141 F.3d 976, 978 (10th Cir.1998).
In Fisher, we rejected a petitioner’s claim for equitable tolling based on the forty-three day delay between AEDPA’s effective date and the date the statute arrived in the prison library. Fisher, 174 F.3d at 714. We concluded that “equity simply does not call for tolling on these facts. Even after learning of AEDPA’s limitations period, Fisher had 322 days to complete his § 2254 petition. That is more than enough time.” Id. at 715. We then noted, “In the right circumstances, a delay in receiving information might call for equitable tolling-such as if the prison did not obtain copies of AEDPA for months and months.” Id. Adding that this “was not the case here,” we found that “Fisher has not shown a rare and exceptional circumstance that calls for equity to intervene.” Id.
The “months and months” statement in Fisher is dicta. But it suggests that the Fisher court not only considered that the question before us would arise, but might have reached a different outcome from the majority here. More importantly, the statement — and the entire discussion of whether equity “call[s] for tolling on these facts” — explicitly refutes the suggestion that Fisher intended to establish a bright-line rule that actual ignorance of AEDPA resulting from a denial of access to the statute can never be a basis for equitable tolling. In its disavowal of such a rule, this section is consistent with the Fisher opinion as a whole, which continually emphasizes that equitable tolling, as an equitable remedy, hinges on the facts of a particular case. See id. at 712 (stating that, as a discretionary doctrine, equitable tolling is unsuited to bright-line rules); id. at 713 (noting that each case must be examined on its facts to see if equitable tolling is warranted); id. at 714 (holding that equity does not entail tolling on these facts). Therefore, while Fisher admittedly is not dispositive of Felder’s claim, I find it inconsistent with the broad rule established by the majority.
Miller also fails to support the majority’s rule. While the Miller court was not presented with an equitable tolling claim, it did note in deciding that the AEDPA limitations period did not violate the Suspension Clause that equitable tolling was possible, and declined to equitably toll for Miller. See Miller, 141 F.3d at 978. Miller apparently claimed that his prison library’s denial of access to “all relevant statutes and case law” until April 1997 both rendered it impossible to fill out his § 2254 petition and left him ignorant of AEDPA. Id. The court’s brief analysis of *176 the equitable tolling issue did not state that a claim of actual ignorance of AEDPA resulting from a denial of access to its text could never be a basis for equitable tolling. Instead, it appeared to rely on certain “individual circumstances” — in particular; that “Miller has provided no specificity regarding the alleged lack of access and the steps he took to diligently pursue his federal claims.” Id. (citing Lewis, 518 U.S. at 349-350, 116 S.Ct. at 2179).[5] Subsequent Tenth Circuit cases have not read Miller to establish the rule the majority adopts today.[6]
Having declined to adopt the majority’s bright-line rule, I find it premature to decide this case without any factual record, in light of the unique circumstances present.
The circumstances here differ significantly from those in Fisher. Fisher’s forty-three day delay in receiving notice of AEDPA was, as we noted, “not rare.” Fisher, 174 F.3d at 714. The seventeen-month delay alleged by Felder is, on its face, far more likely to be a “rare and exceptional” circumstance. Unlike the delay in Fisher, it is also prejudicial, and thus susceptible to equitable intervention. If Felder’s allegations are true, his grace period had expired by the time he learned of the time limit. Thus, the fact relied upon by the Fisher court in finding that “equity does not call for tolling on these facts” would not apply here. See id. at 715 (“Even after learning of AEDPA’s limitations period, Fisher had 322 days to complete his § 2254 petition.”). Applying the Fisher standard, if Felder’s allegations are true, equity might “call for tolling” here. The Fisher “months and months” dicta, id., merely confirms that Felder’s different circumstances may warrant a different result.
Likewise, the circumstances apparently relied upon in Miller do not exist, here. *177 Felder’s final state post-conviction petition was dismissed in April 1997, only three months before he filed his § 2254 petition. More importantly, Felder’s allegations are not merely general and conclusory. Felder has specifically alleged that his failure to comply with AEDPA’s time limit resulted from the statute’s unavailability to Eastham Unit inmates until September 1997, and has presented affidavit testimony supporting this specific allegation. Respondent was given an opportunity to rebut these allegations and failed entirely to do so. Each of these circumstances appears to differ from Miller.
I therefore cannot decide at this stage, as a matter of law, that Felder’s circumstances are not “rare and exceptional,” Davis, 158 F.3d at 811. Nor can I decide with certainty that it is not “inequitable” to decline to toll for at least twenty-one days. Id. at 810 (noting that equitable tolling is warranted when “strict application of the statute of limitations would be inequitable”); see also Fisher, 174 F.3d at 713 (citing Lonchar and noting that, in light of the importance of the right to bring a first habeas petition, “we must be cautious not to apply the statute of limitations too harshly”); cf. Lewis, 518 U.S. at 351, 116 S.Ct. at 2180 (stating that, to show violation of constitutional right of access to courts, a prisoner “might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison’s legal assistance facilities, he could not have known”). Any such determination is premature.
As the majority discusses, Felder has not had the opportunity to present his equitable tolling claim to the district court. The district court’s inability to consider the issue means that there has been no factual development whatsoever. To determine whether Felder’s circumstances warrant equitable tolling, it is necessary both to assess the veracity of Felder’s assertions and to develop the other factual circumstances that may bear on this legal determination. See, e.g., Fisher, 174 F.3d at 715 (stating that, as it depends on individual facts and circumstances, decision whether equitably toll is “left to the district court’s discretion” and is reviewed for abuse of that discretion).
Without expressing any opinion as to its merit, I would therefore remand for the district court to assess Felder’s equitable tolling claim for the first time, conducting such fact-finding as it finds necessary to determine 1) whether Felder can establish that his factual allegations — including actual ignorance of AEDPA until September 1997 resulting from its unavailability to Eastham Unit inmates — are true; and 2) if so, whether Felder’s circumstances as a whole are the “rare and exceptional” circumstances, Davis, 158 F.3d at 811, in which equity compels us to toll the AED-PA statute of limitations. As, in light of this- court’s jurisprudence, I find the majority’s election to instead decide this case on legal grounds premature, and the rule it establishes overly sweeping, I dissent.

. As the majority notes, prior to AEDPA's April 24, 1996 effective date there was no statute of limitations on federal habeas claims. See Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir.1998). AEDPA imposed a one-year limitations period. See 28 U.S.C. § 2244(d)(1) (1999) (providing one-year period after slate court judgment becomes final to file federal habeas petition, subject to certain exceptions).

. In its appellate brief, Respondent had the opportunity to provide evidence contradicting Felder’s allegations. He failed entirely to do so.

. Our cases suggest that Felder's diligence in pursuing his federal claims after his final state habeas petition was dismissed might impact his equitable tolling claim. See Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir.1999). Felder's diligence in obtaining the statute is another relevant factual question; only by showing such diligence can Felder show that his lack of access to AEDPA was either 1) beyond his control or 2) actually caused his failure to timely file his § 2254 petition. See Vasquez v. Greiner, 68 F.Supp.2d 307, 310 (S.D.N.Y.1999) (refusing to dismiss claim for equitable tolling based on appellate attorney's alleged failure to inform petitioner of the Court of Appeals' denial of his direct appeal; but noting that equitable tolling might prove "unwarranted on all the facts and circumstances,” such as if, after a hearing, 1) the petitioner’s claims prove incredible in light of the weight of the evidence; or 2) the evidence indicates that the "petitioner, in the exercise of reasonable diligence, should have known of the Court of Appeals' decision at an earlier date”).

.I disagree with the majority’s contention that such circumstances cannot be "rare and exceptional” because "countless other prisoners could claim [them] as their own.” Empirically, I believe that the complete denial of access to the newly-enacted AEDPA for a period greater than twelve months is "rare and exceptional.” Legally, such a denial’s actually leading to the dismissal of a first § 2254 petition as time-barred must be “rare and exceptional” in light of the Constitution. See Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996) (to show violation of constitutional right of access to courts, a prisoner "might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison’s legal assistance facilities, he could not have known”).

. Unlike Felder, Miller apparently claimed that the denial of access to all texts both precluded him from completing his § 2254 petition and left him actually ignorant of AEDPA. See id. The Tenth Circuit did not separately analyze Miller’s two claims. See id. Seemingly referring to the impossibility argument, the court noted two other relevant circumstances: 1) Miller’s unexplained failure to diligently pursue his federal claims— Miller’s sole state petition for post-conviction relief was denied in October 1993, and he admittedly had full access to relevant texts until January 1995, yet he did not file his federal petition until July 1997; 2) the similarities between Miller’s § 2254 claims and those in his direct appeal and state postcon-viction motion. See id. These circumstances, particularly the latter, while clearly refuting Miller's claim that he could not have completed his federal petition without additional research access, do not seem relevant to his claimed actual ignorance of AEDPA.

. In Bradley v. Poppel, 1999 WL 992981 (10th Cir., Nov. 2, 1999) (unpublished), Bradley claimed equitable tolling based on 1) the unavailability of trained law clerks to assist him with his defense; 2) his ignorance of the law; and 3) an inadequate law library. See id. at *2. The court rejected Bradley's first and second claims with reference to established rules, noting that there is no right to legal counsel in collateral proceedings and that ignorance of the law does not warrant equitable tolling. See id. The court conspicuously failed to rely on such an ironclad rule in disposing of Bradley’s third claim. Instead, it held that "Bradley’s conclusory allegation that prison library facilities are inadequate is also insufficient to justify equitable tolling.” Id. (citing to Miller's statement that equitable tolling is unwarranted where the inmate has "provided no specificity” in his allegations).
Likewise, in Rodriquez v. Klinger, 1999 WL 394562 (10th Cir., June 16, 1999) (unpublished), Rodriquez sought equitable tolling because the prison warden "failed to provide him a copy of AEDPA-” Id. at 1. The Tenth Circuit noted that the district court had held that Rodriquez was not entitled to equitable tolling because he was insufficiently diligent in pursuing his claims. Id. In particular, the court emphasized the district court's finding that Rodriquez had never requested a copy of AEDPA, even though he had access to an inmate research assistant who could have provided the necessary information. See id. In light of these findings, and emphasizing that it had closely reviewed the entire record, the Tenth Circuit affirmed the denial of equitable tolling.
Like Miller, both cases appear to rely on individual circumstances. Neither opinion is consistent with Miller's having established a rule that equitable tolling based on a denial of access to AEDPA can never exist.